(No. 7296.   April 30, 1946.)

RANDALL PILKINGTON, Plaintiff-Respondent, v.
CHARLES BELSON and SAM S. SIEGEL, doing busi-
ness under the firm name and style of National Produce
Company, Defendants-Appellants.

[168 P. (2d) 815.]

A. A. Merrill for appellants.

Wm. P. Hemminger for respondent.

HOLDEN, J.—August 23, 1944, appellants by and through their representative and buyer, Fred Johnson, entered into the following contract with respondent Randall Pilkington:

"Agreement

"Idaho Falls, Idaho, August twenty-third, Nineteen, forty-four.

"National Produce Company agrees to buy, and Randall Pilkington, Hamer, agrees to sell the following described produce: Ninety thousand pounds of U. S. Number One Russets, size A, at a dollar, forty per cut (sic), at Basset Warehouse on board cars Hamer.

"Remarks: To be delivered when ready to dig. Number Two at market when delivered. Buyer to furnish bags and pay freight to Bassett.

"All potatoes subject to U. S. Inspection.

> "National Produce Company
> By Fred Johnson, Buyer
> By Randall Pilkington, Seller."

Later, on or about the 4th of October, 1944, the following agreement (covering the same crop of potatoes) was made between appellants (again represented by Fred Johnson) and respondent Pilkington:

### "Agreement

"Idaho Falls, Idaho, October fourth, Nineteen, forty-four.

"National Produce Company agrees to buy, and Randall Pilkington agrees to sell the following described produce: At Hamer warehouse.

"Remarks: All potatoes on thirty acres at Hamer, at one hundred dollars per acre. Buyer to pay picking and trucking. Grower to dig the potatoes.

"All potatoes bought subject to U. S. Inspection.

> "National Produce Company
> By Fred Johnson, Buyer
> By Randall Pilkington, Seller."

Thereafter, apparently between the 16th and 28th day of October, 1944, respondent allegedly delivered to appellants at Hamer, Idaho, 131,850 pounds of No. 1 Idaho Russet potatoes and 26,370 pounds of No. 2 Idaho Russet potatoes. Respondent Pilkington, being informed the last above quoted contract was void because in violation of O.P.A. regulations (which is admitted by appellants), and being unable to reach a satisfactory settlement with appellants, brought this action on the 19th day of February, 1945, to recover the reasonable value of the potatoes on the theory the contract dated August 23, 1944, first above quoted, had been rescinded and abandoned both orally and by the conduct of the parties.

By his first count, or first cause of action, respondent alleged:

"That between the 16th day of October, 1944, and the 28th day of October, 1944, at Hamer, Jefferson County, Idaho, the plaintiff sold and delivered to the defendants one hundred thirty-one thousand eight hundred fifty (131,-850) pounds of Number One, Idaho Russet potatoes;

"That the same were reasonably worth One and 70-100 Dollars ($1.70) per hundred, or a total of Two Thousand Two Hundred Forty-one and 45-100 Dollars $2,241.45) ;

"That the defendants have not paid the same, nor any part thereof, except Two Hundred Dollars ($200.00) paid on August 23, 1944; Four Hundred Thirty-three Dollars ($433.00) paid on October 12, 1944; and Five Hundred Sixty-six Dollars ($566.00) paid on October 13, 1944, and that there is now due and owing from the defendants to the plaintiff the sum of One Thousand Forty-two and 45-100 Dollars ($1,042.45) and interest at the legal rate."

By his second count, or second cause of action, respondent alleged:

"That between the 16th of October, 1944 and the 28th day of October, 1944, at Hamer, Jefferson County, Idaho, the plaintiff sold and delivered to the defendants twenty-six thousand three hundred seventy (26,370) pounds of Number Two, Idaho Russet potatoes;

"That the same were reasonably worth One and 40-100 Dollars ($1.40) per hundred, or a total of Three Hundred Sixty-nine and 18-100 Dollars ($369.18) ;

"That the defendants have not paid the same, nor any part thereof, and that there is now due and owing from the defendants to the plaintiff the sum of Three Hundred Sixty-nine and 18-100 Dollars ($369.18), together with interest at the legal rate."

Appellants answered the first cause of action denying each allegation therein "except as hereinafter specifically admitted"; further answering, appellants denied:

"that they purchased of and from the plaintiff, 131,850 pounds of No. 1 Idaho Russet potatoes on October 16, 1944,

but in this connection alleges that on August 23, 1944, the defendants Charles Belson, and Sam S. Siegel, doing business under the firm name and style of National Produce Company, purchased of and from the plaintiff, approximately 90,000 pounds of U. S. No. 1 Russet potatoes; that said plaintiff only delivered to the said defendant 85,650 pounds of U. S. No. 1 Russet potatoes."

Appellants denied the potatoes were reasonably worth $1.70 per hundred, or a total of $2,241.45; appellants admitted paying respondent $200.00 August 23, 1944; $433.00 on October 12 and $566.00 on October 13, 1944, and denied all other allegations, "except that there is a balance due the plaintiff of $136.08, which sum the defendants have offered the plaintiff many times since said potatoes were purchased."

Answering the second cause of action, appellants denied "both generally and specifically each and every allegation set forth and contained therein except as hereinafter specifically admitted"; further denied "that on October 16th, 1944 and on the 28th day of October, 1944, the plaintiff delivered to the said defendants, 26,370 pounds of No. 2 Russet potatoes but in this connection alleges that between October 18th, and October 28th, 1944, the plaintiff delivered to the defendants 16,500 pounds of U. S. No. 2 Russet potatoes"; also denied the potatoes were reasonably $1.40 per hundred, or a total of $369.18; denied there was due respondent $369.18, as alleged by respondent in his second cause of action; appellants further denied they had "failed to pay for any part of said potatoes" and alleged that "there has been paid to the plaintiff on said potatoes referred to in plaintiff's first cause and second cause of action, the total sum of $1199.00."

Further answering respondent's complaint and as an affirmative defense thereto, appellants alleged:

"That between the 18th day of October, 1944, and the 28th day of October, 1944, the plaintiff delivered to the defendants, Charles Belson and Sam S. Siegel, doing business under the firm name and style of National Produce Company, 85,650 pounds of U. S. No. 1 potatoes at $1.40 per cwt., aggregating $1199.00 and also delivered 16,600 pounds of U. S. No. 2 potatoes at 85c per cwt. amounting to $141.10;

"That the total purchase prices for said potatoes was $1340.20, from which was deducted, pursuant to law, the State sale tax, amounting to $5.12, which left a balance of $1335.08, justly due the plaintiff.

"That as hereinbefore stated the defendants paid to the plaintiff, a total sum of $1199.00, leaving a balance due to the plaintiff on the purchase of said potatoes, $136.08.

"That the defendants have offered the plaintiff said $136.08 many times and the plaintiff has refused to accept the same.

"That by these presents the defendant hereby tenders to the plaintiff the sum of $136.08 together with interest at the rate of 6% per annum thereon, from and after the 28th day of October 1944, and will at the time of the trial of this case tender to the clerk of this court, the sum of $136.08 together with legal interest thereon from and after October 28, 1944."

The cause was tried December 15, 1945. December 17, 1945, the jury returned a general verdict in favor of respondent and against appellants for "the sum of $993.45 plus $64.57 interest." Judgment was entered thereon December 18, 1945. The appeal to this court is from the judgment.

Appellants insist the trial court erred in entering judgment on the general verdict in "that it cannot be ascertained from the judgment, nor the verdict whether judgment is on plaintiff's first cause of action or on his second cause of action; nor for what amount the jury found under each cause of action." While the verdict is general, appellants made no objection to it in the court below. This court held in *Boomer v. Isley,* 49 Ida. 666, 673, 290 P. 405 (cited and adhered to in *Judd v. Oregon Short Line R. R. Co.,* 55 Ida. 461, 479, 44 P. (2d) 291), where a general verdict was returned by the jury, as in the case at bar, that appellant Boomer "Having failed to make timely objection to the form of verdict submitted, or to request that separate verdicts be returned (as appellants failed to do in the case at bar), appellant (Boomer) has waived his objection to the verdict. See *Blackfoot Stock Co. v. Delamue,* 3 Ida. 291, 29 P. 97, and *Knollin & Co. v. Jones,* 7 Ida. 466, 63 P. 638, holding that objection to the form of verdict must be

made in the trial court before judgment, or before the jury is discharged (citing cases), or before the verdict is received and recorded (citing cases), in order that the error may be corrected. It is too late to raise the question for the first time on motion for a new trial or on appeal. (citing cases)."

It will be noted appellants did not plead the making, execution or delivery of the contract first above quoted, dated August 23, 1944. Neither did appellants plead "that according to the terms of said written contract the plaintiff was to pay the defendant $1.40 per cwt. for its U. S. No. 1 and the market price for his No. 2 potatoes sorted out of said lot at the time of harvest." Nevertheless, during the course of the trial, while respondent was putting in his proof, appellants offered and the court admitted said contract in evidence over the objection of respondent. And the trial court admitted in evidence the last above quoted agreement, dated October 4, 1944, apparently on the theory it was a circumstance tending to prove an abandonment of the contract dated August 23, 1944, later instructing the jury it was void as a contract, because it violated O.P.A. regulations. And, further, respondent also offered and the court admitted oral evidence of the rescission and abandonment of the first contract between the parties dated August 23, 1944, although not pleaded. In other words, it appears both parties insisted upon injecting into the controversy new issues clearly outside any issue formed by the pleadings. Neither, therefore, is in a position to complain.

This court held in *Gaskill v. Washington Water Power Co.*, 17 Ida. 128, 105 P. 51, that:

"The parties to an action must act consistently, and they will not be heard on appeal to complain of errors made by the trial court which they themselves invited and procured the court to make."

The record discloses there is a substantial conflict in the evidence (*Cole v. Fruitland Canning Co.*, 64 Ida. 505, 521, 134 P. (2d) 603), and, further, that the trial court correctly and fully instructed the jury on the new issues so injected into the case, as well as upon the issues formed by the pleadings. Furthermore, the result of the injection of the new issues into the controversy was that all the facts and circumstances bearing upon the controversy went to

the jury under appropriate instructions; hence, no useful purpose would be served by reversing the judgment and granting a new trial.

Judgment affirmed. Costs awarded to respondent.

Ailshie, C.J., and Budge, Givens and Miller, JJ., concur.