551 P.2d 966

William McDRUMMOND et al.,
Plaintiffs-Appellants,

v.

MONTGOMERY ELEVATOR COMPANY, a
Corporation, Defendant-Respondent.

No. 11999.

Supreme Court of Idaho.

June 28, 1976.

Donald W. Lojek of Moffatt, Thomas, Barrett & Blanton, Boise, Daniel A. Slavin of Stephen & Slavin, Twin Falls, for for plaintiffs-appellants.

Warren E. Jones of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for defendant-respondent.

McFADDEN, Chief Justice.

Plaintiffs-appellants, William McDrummond, Swift & Company, and Globe Indemnity Company instituted this action against defendant-respondent Montgomery Elevator Company, which is engaged in inspecting and maintaining elevators. McDrummond seeks compensation for injuries received when he fell down an elevator shaft after the floor of the elevator car gave way. McDrummond's employer, Swift & Company, and Swift's surety, Globe Indemnity Company, seek damages by subrogation for workmen's compensation benefits paid to McDrummond. I.C. § 72–204 (repealed S.L.1971, Ch. 124, § 2). The plaintiffs alleged that the accident was proximately caused by the negligence of Montgomery in undertaking an inspection of and repairs to the elevator. At trial, the jury returned a verdict for the defendant, Montgomery Elevator Company, and judgment was entered in accordance with the verdict. The plaintiffs appealed. This court reverses the judgment and remands the case for a new trial for the reasons discussed herein.

The accident involved occurred May 7, 1971 in Swift and Company's cheese making facility in Twin Falls. At the time of the accident, McDrummond was employed by Swift in the cheese packaging department. McDrummond was moving a load of cheese from the packaging room located on the third floor of the plant onto the plant's freight elevator so that he could move the cheese to refrigerated storage units on the first and second floors. The cheese was loaded on a "flat" which was moved by a dolly or a jack. McDrummond was in the process of moving the loaded flat onto the freight elevator car when the

floor of the car gave way, and McDrummond fell three and one-half stories receiving extensive injuries.

Swift and its surety, Globe Indemnity Company, paid workmen's compensation benefits to McDrummond for the injuries he received pursuant to Title 72, Part I of the Idaho Code.[1] Because he was injured in the course of his employment, McDrummond's sole remedy against his employer, Swift, was workmen's compensation. I.C. § 72–201 (repealed, S.L.1971, Ch. 124, § 2).

The key allegation of the plaintiffs' complaint is that Montgomery negligently performed an inspection of and repairs to the elevator and that this negligence was the proximate cause of the accident. In its answer, Montgomery denies that it undertook to perform an inspection of the elevator, admits that it performed service work on the elevator but denies that it performed the service work negligently; Montgomery also asserts as affirmative defenses that McDrummond and Swift each were contributorily negligent and that McDrummond assumed the risk of his injury.[2]

The evidence at trial on the issues of negligence and contributory negligence was in sharp conflict and can be summarized as follows. On December 3, 1970, Dale Brumfield, a service representative of Montgomery, visited the Swift plant. Elmer J. Hagerty, Swift's plant manager, and John H. Lively, Swift's plant superintendent, testified that the purpose of Brumfield's visit was to inspect the elevator. Rod C. Grant, manager of the Salt Lake branch office for Montgomery, testified that Swift did not request an inspection and Brumfield testified that the purpose of his December 3 visit was to service the elevator and that as a result of his service call he recommended that the elevator be recabled, that the governor be bolted down, and that some concrete which was wearing against the elevator cables be removed. Montgomery's subsequent invoice to Swift described the services rendered on the December 3 visit as: "Lubricate and clean governor. Lubricate hoist cables and guide rails. Inspect cables."

Montgomery and Swift agreed to replace the cables and on January 4, 1971, Grant and Brumfield completed installation of the cables. They testified that the old cables which they removed were in very poor condition. On January 15, 1971, Grant sent Lively a letter in which he recommended replacement of the hoist cable shackle springs. Grant had discovered that the shackle springs were worn during the course of his work recabling the elevator.

In April, 1971, Brumfield again visited the Swift plant to deliver some elevator parts. He testified that, while waiting for Lively, he opened a door on the elevator shaft and observed that the undercarriage of the elevator was very rusty and that a brace rod supporting the elevator floor appeared to be missing. He said that he informed Lively of his concern about the condition of the elevator undercarriage and that he recommended that a load test be performed on the elevator. Hagerty and Lively testified that they received no communication from Montgomery advising them of the rusted condition or that a load test should be performed.

Montgomery had no further contact with Swift in regard to the elevator until the

---

1. Title 72, Ch's 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, and 12 were repealed by S.L.1971, Ch. 124, § 2, effective January 1, 1972. However, because the accident occurred May 7, 1971, the workmen's compensation law, as it existed prior to repeal, is the controlling law for the case at bar. S.L.1971, Ch. 124, § 3 (I.C. § 72–805), and § 5. All references in this opinion to the Workmen's Compensation Act are to the statutes repealed by S.L.1971, Ch. 124, § 2.

2. Under the law in effect at the time of the accident, contributory negligence was a complete bar to recovery in a negligence action by the person found to be contributorily negligent. *Idaho Title Co. v. American States Ins. Co.*, 96 Idaho 465, 531 P.2d 227 (1975). See, I.C. § 6–801 et seq.

accident in which McDrummond was injured occurred May 7, 1971. The cause of the accident was the failure of a gusset plate which attached the elevator floor to the channel stile, the main support for the elevator cage. The failure of the gusset plate allowed one side of the floor to separate from the elevator cage, causing McDrummond to fall. Grant, Montgomery's branch manager, testified that he had examined the elevator after the accident and that, in his opinion, the gusset plate had rusted through and broken. Evidence was also presented that a brace rod which was ordinarily attached to the channel stile and the floor structure and supported the floor was missing.

▆▆ The primary assignments of error by the plaintiffs focus upon jury instructions given on the issues of contributory negligence and assumption of the risk and upon the general verdict forms submitted to the jury. The plaintiffs assert that the trial court erred by giving the following instruction on contributory negligence.

"Contributory negligence is negligence on the part of a person injured, which, cooperating with the negligence of another, helps in proximately causing the injury of which the former thereafter complains.

"You will note that in order to amount to contributory negligence, a person's conduct must be not only negligent, but also one of the proximate causes of his injury.

"One who is guilty of contributory negligence may not recover from another for the injury suffered.

"The reason for this rule of law is not that the fault of one justifies the fault of another, but simply that there can be no apportionment of blame and damages

among the participating agents of causation."

Evidence was presented which would tend to establish contributory negligence on the part of Swift independent of any acts or omissions by McDrummond. This evidence includes Swift's alleged failure to perform a load test, Swift's alleged failure to inspect the elevator for some forty years prior to its contact with Montgomery, and Swift's alleged failure to properly maintain the elevator. If the jury found that Swift was contributorily negligent and that this negligence was a proximate cause of the accident, then Swift would be barred from recovering damages for workmen's compensation benefits paid to McDrummond. As this court held in *Liberty Mutual Ins. Co. v. Adams,* 91 Idaho 151, 417 P.2d 417 (1966).

> " 'Thus, whether an action is brought by the employer or the employee, the third party tort-feasor should be able to invoke the concurrent negligence of the employer to defeat its right to reimbursement, since, in either event, the action is brought for the benefit of the employer to the extent that compensation benefits have been paid to the employee.' " [Quoting *Witt v. Jackson,* 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P.2d 641, 649 (Cal. 1961)] 91 Idaho 156, 417 P.2d 422.

If Swift is barred from a recovery of workmen's compensation payments by its contributory negligence, then it would follow that Swift's surety, Globe Indemnity Company, is also barred.[3] See, *Insurance Company of North America v. Anderson,* 92 Idaho 114, 438 P.2d 265 (1968). It is the conclusion of the court that this instruction was too broad in its application. It is conceivable that the jury, while finding McDrummond free from contributory

---

3. The parties did not assign as error any issues regarding a reduction of the amount of damages awarded to McDrummond by the amount of workmen's compensation benefits he received if damages were awarded to him. See *Liberty Mutual Ins. Co. v. Adams, supra; Roe v. Workmen's Compensation Ap-*

*peals Board,* 12 Cal.3d 884, 117 Cal.Rptr. 683, 528 P.2d 771 (Cal.1974) ; *Witt v. Jackson,* 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P. 2d 641 (Cal.1961). See also, *Dept. of Finance v. Union Pac. R.R. Co.,* 61 Idaho 484, 104 P.2d 1110 (1940). This court will not consider this issue at this time.

negligence, might find that Swift was contributorily negligent, and under the instruction as given that finding would bar not only recovery by Swift and its subrogee, but would also bar any recovery by McDrummond. See, *Witt v. Jackson,* 57 Cal. 2d 57, 17 Cal.Rptr. 369, 366 P.2d 641 (Cal. 1961); 2A Larson's Workmen's Compensation Law § 75.22 (1976). See, *Lopez v. Allen,* 96 Idaho 866, 538 P.2d 1170 (1975).

The plaintiffs also assign as error the giving of an instruction on assumption of the risk. The essence of this instruction was that if the jury found that McDrummond had assumed the risks of harm arising from his employment then he could not recover damages for injuries resulting therefrom. The plaintiffs argue that the defense of assumption of the risk is available only in actions involving a master-servant relationship outside the scope of workmen's compensation or where risks may be assumed by an express contract. In response, Montgomery asserts that this cause of action arose from a master-servant relationship.

■ This court recently held that the doctrine of assumption of the risk "is available only in cases of a master-servant relationship outside of the scope of the Workman's Compensation Act and in instances of express contract with one party agreeing to assume the risk".[4] *Messmer v. Ker,* 96 Idaho 75, 80, 524 P.2d 536, 541 (1974). *Accord, Fawcett v. Irby,* 92 Idaho 48, 55, 436 P.2d 714, 720 (1968) (Spear, J., concurring specially). As neither party alleged that a contractual relationship existed between McDrummond and Montgomery, the defense of assumption of risk is available to Montgomery only if McDrummond was within the scope of a master-servant relationship with Montgomery at the time of the accident. The record is clear that no master-servant relationship existed between McDrummond and Montgomery and thus it was error to give the instruction on assumption of the risk. See,

*Cloughley v. Orange Transportation Co.,* 80 Idaho 226, 327 P.2d 369 (1958).

■ The plaintiffs also assign as error the general verdict forms given by the trial court to the jury. Although both the plaintiffs and the defendant requested special verdicts, the trial court gave the following three different general verdict forms to the jury:

(1.) "We, the jury * * * find in favor of the plaintiff William McDrummond in the amount of $_____."

(2.) "We, the jury, * * * find in favor of the plaintiff Globe Indemnity Company in the amount of $_____."

(3.) "We, the jury * * * find in favor of the defendant Montgomery Elevator Company and against the plaintiffs."

Nine members of the jury signed and returned the third verdict form. The plaintiffs submit that the trial court erred by submitting these general verdict forms because they did not present to the jury all the verdicts possible. Upon the basis of the evidence presented, the jury could have found Montgomery negligent, Swift (and thus Globe Indemnity) contributorily negligent, and McDrummond entitled to recover against Montgomery; however, the jury could not return such a verdict on the verdict forms submitted. The trial court erred in submitting only those jury verdicts, as these verdicts failed to cover the other contingency. See *Lutyen v. Ritchie,* 37 Idaho 473, 218 P. 430 (1923).

■ Montgomery argues that the errors by the trial court described above were not prejudicial because Montgomery was not negligent as a matter of law. This court has repeatedly said that "[o]rdinarily issues of negligence present questions of fact to be resolved by the trier of fact, and they become a matter of law only when the facts are undisputed and only one reasonable conclusion can be drawn from the evidence'. *Schaefer v. Elswood Trailer Sales,* 95 Idaho 654, 656,

---

4. To the extent it is in conflict, *Domingo v. Phillips,* 87 Idaho 55, 390 P.2d 297 (1964), is overruled.

516 P.2d 1168, 1170 (1973)." *Papp v. Cantrell*, 96 Idaho 751, 753, 536 P.2d 746, 748 (1975). Because of the form of the general verdicts, this court is unable to determine how the jury resolved the issue of Montgomery's negligence. The record presents a sharp conflict in the evidence on the issue of Montgomery's negligence; therefore, this court cannot rule upon this issue as a matter of law. The case must be remanded for a new trial.

It is to be noted that in this action the trial court, without first obtaining the express waiver by counsel and contrary to the explicit language of I.R.C.P. 51(b), instructed the jury after the attorneys had presented their closing arguments to the jury. The requirements of Idaho Const. Art. V, § 26 demand that uniformity be maintained in the proceedings in district courts, and compliance with I.R.C.P. 51(b) is essential to obtain such uniformity.

By reason of this court's disposition of this case, consideration of other assignments of error becomes irrelevant.

The judgment is reversed and the cause remanded for a new trial. Costs to appellant.

DONALDSON, SHEPARD and BAKES, JJ., and HAGAN, District Judge, concur.